February 19th, 1912.

————————o————————

5470.

(Court of Appeal, Parish of Orleans.)

## J. R. WOOD & SONS vs. FRENCH NOVELTY CO.
## ON MOTION TO DISMISS.

The mandatary who exceeds his authority without having exhibited his powers, is personally responsible to those with whom he contracts.

Appeal from the Civil District Court, Division "E."

Dinkelspiel, Hart & Davey, and G. Fernandez, for plaintiff and appellee.

Lazarus, Michel & Lazarus, and Sessler, for defendant and appellant.

ST. PAUL, J.—Defendant appeals and plaintiff moves in this Court to dismiss the appeal on the ground that no proper bond has been furnished as there is no legal surety thereon.

The appeal bond herein is signed as surety, "Leonard Krower, per pro. Alfred Krower," and there is no evidence in the record to show that Alfred Krower had authority to sign for Leonard Krower.

— 157 —

In support of its motion to dismiss, appellee cites **Levy vs. Levisohn, 2 Ct. of Ap., p. 87**.

That case does not appear to us applicable in the present instance; for there the Court held that there was no means of determining whether any one at all was bound as surety on the appeal bond.

On the other hand the very authority relied upon therein, viz: **State ex rel. Mitchel vs. Judge, 21 An., 731**, shows that the bond herein furnished is sufficient.

Said the Supreme Court in that case; "The firm name of 'Sampson Bros. was signed (as surety on the appeal bond) by Chandler Sampson  *   *   *  If he had no authority to bind his brother and partner at least he bound himself.  We consider the bond perfectly good and sufficient."

The case here is the same.  If Alfred Krower had no authority to bind Leonard Krower, at least he bound himself.  The mandatory who exceeds his authority without having exhibited his power is personally responsible to those with whom he contracts.  **C. C., 3010, 3013.**

Accordingly we have on the face of the papers a bond on which either Leonard Krower or Alfred Krower is bound as surety, and therefore, as in the **Mitchel case,** a valid bond.

The sufficiency (i. e. soundness) of the surety is not presently involved, and could not have been put at issue in this form.  This we mention only in explanation of our having omitted in our quotation from the **Mitchel case,** what the Court said of the solvency of the surety, which had there been duly put at issue.  But this had no bearing on the principle involved.

The motion to dismiss must be denied.

Motion to dismiss denied.

November 6th, 1911.

# ON THE MERITS.

1. Where proceedings for a sequestration are abandoned and no property has been seized thereunder, the question whether or not the writ properly issued becomes merely academic.
2. A non-resident, within the meaning of the attachment laws of this State, means one who has his domicile outside of the State.
3. The right to attach the property of a non-resident is not a mere substitute for citation, but a substantial remedy, the exercise of which is not conditioned upon inability to reach the defendant by any ordinary process.
4. The prescription of one year, as a bar to an action *ex delicto*, runs from the time the damage was sustained and not from the time when plaintiff gained knowledge thereof, C. C. 3537.
5. An appeal is not frivolous merely because there is no real defense to the merits, if it otherwise presents issues entitled to the serious consideration of the Court.

Appeal from the Civil District Court, Division "E."

Dinkelspiel, Hart & Davey, and Fernandez, for plaintiff and appellee.

Lazarus, Michel & Lazarus, for defendant and appellant.

D. Sessler, attorney.

ST. PAUL, J.—This case was already before us under the number 5041 of our docket, wherein we held that "where a plaintiff (at the instance of defendant) elects in favor of the amended demand, the original one is eliminated from the case."

As the elimination of the original carried with it the abandonment of the writ of sequestration based thereon (under which no property of any sort was seized) the question whether or not the writ properly issued in the

first instance now presents only a moot case, and accordingly we are without authority to pass upon it.

As the case now stands but two questions are presented:

1. The first is whether or not a writ of attachment properly issued against a foreign corporation as a non-resident, though it did business within the State, and had a local establishment and a local representative therein.

It is contended that such a corporation is not a non-resident, but we think that the term non-resident, within the meaning of the attachment laws of this State, applies to all who are not domiciled within the borders of the State. See **Rayne vs. Taylor & Co., 10 An. 726.** The case of **Munroe vs. Frosh et al, 2 An., 962,** has no application. From the facts of that case there was no reason to conclude that the principal establishment of the firm of Frosh and Muller was in Galveston rather than in New Orleans, and the Court did not undertake to decide that it was. In the case at bar, however, it is of record that the corporate domicile of defendant is in the State of New York.

Nor do we think that attachment lies against a non-resident merely as a substitute for citation, to be used only when the defendant cannot be reached by the ordinary process of the Court. But the right to attach the property of a non-resident is a substantial one, to which the law has attached no such condition as that contended for. For us to do so would be judicial legislation. See also **Mineral Point Ry. Co. vs Keep, 22 Ill., p 9**

2. The only other question presented is whether or not the trial Judge properly sustained a plea of prescription urged in bar of a reconventional demand for damages.

This reconventional demand was filed on September 30th, 1910 and the matters therein complained of are certain allegation or charges contained in the original petition herein filed on June 22nd, 1909, which charges were reported "at once" to certain commercial bodies and resulted in having defendant's commercial rating cancelled and in defendant's "at once" experiencing a loss of credit.

It is true that the reconventional demand refers to the supplemental petition of January 4th, 1910, but that petition contains not a single allegation or charge prejudicial to defendant, so that it need not be considered.

It is also true that defendant avers that it was "continually harassed and worried by inquiries from creditors and subsequently was repeatedly refused credit," but since defendant alleges that its commercial rating was cancelled "as soon as the above charges were published," and that defendant "at once began to experience a loss of credit," it is clear that the damage done defendant's credit followed immediately upon the publication of the charges and the cancellation of its commercial rating, and that subsequent events were the mere bringing home to defendant of the knowledge thereof.

In our opinion therefore, as also in the opinion of the District Judge, the damages sustained by the defendant occurred more than a year before the filing of its reconventional demand, and the plea of prescription was therefore properly sustained.

On the merits the main demand is not seriously disputed, and plaintiff has answered this appeal praying for damages for a frivolous appeal, but the circumstances do not warrant such allowance. We think indeed, that the appeal was not well founded, but the issues propound-

ed and herein passed upon suffice to attest the fact that defendant has taken this appeal in all seriousness and not without some hope of success.

Judgment affirmed.

February 19th, 1912.

Rehearing refused, March 18, 1912.

April 23, 1912, decree Supreme Court, writ denied.